# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DENNIS HYDE,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. C14-3081-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Dennis Hyde seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his application for Social Security disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Hyde contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that Hyde was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## I. BACKGROUND

Hyde has a high school education. AR 18. He was born December 30, 1960, and was 50 years old at the time of alleged onset, February 28, 2011, which is defined as an individual closely approaching advanced age. 20 C.F.R. § 404.1563. Hyde alleges that he is disabled due to a back injury that caused him to stop working. AR 210, 216.

The application was denied initially and on reconsideration. AR 50, 59. Hyde then sought a hearing before an administrative law judge (ALJ). On June 20, 2013, ALJ Julie Bruntz conducted a hearing, at which Hyde testified. On August 26, 2013, the ALJ

issued a decision denying the claim.  AR 10-19.  The ALJ found that Hyde had severe impairments to his back but made a residual functional capacity (RFC) finding with no sitting or standing requirements.  AR 12, 13.  The Appeals Council affirmed the ALJ's ruling on November 14, 2014.  AR 1.  The ALJ's decision thus became the final decision of the Commissioner.  AR 1.

Hyde filed a complaint (Doc. No. 2) in this Court on December 17, 2014, seeking review of the ALJ's decision.  On January 13, 2015, with the consent of the parties (Doc. No. 5), the Honorable Mark W. Bennett transferred this case to me for final disposition and entry of judgment.  The parties have now briefed the issues and the matter is fully submitted.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); *accord* 20 C.F.R. § 404.1505.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Id*. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet

3

the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1545(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." *Id*. § 404.1545(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove

disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since February 28, 2011, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease and facet osteoarthritis of the lumbar spine; and a chronic lumbar and thoracic strain/sprain.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) such that could lift and carry 20 occasionally and 10 pounds frequently; stand, walk or sit for six hours in an 8-hour workday; pushing and pulling as well as the operation of hand and foot controls would be unlimited within the aforementioned weights; occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds and never crawl; and occasionally balance, stoop, kneel and crouch.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on December 30, 1960 and was 50 years old, which his defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2011 through the date of this decision.

AR 13-20.

## IV.   *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit Court of Appeals has explained this standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers

both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Hyde contends the ALJ's decision is not supported by substantial evidence and makes the following arguments:

1. The ALJ's credibility determination is not supported by substantial evidence.

2. The ALJ's RFC finding is not supported by substantial evidence.

3. The ALJ erred by failing to assign controlling weight to the opinions of Hyde's treating medical source, Dr. Erin Peterson.

Doc. No. 11. I will address only the third argument, as it compels remand for further proceedings.

### A. *Applicable Standards*

The Social Security regulations state, in relevant part:

> Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight</u>. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2) [emphasis added]. What this means is that a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a]

whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937. When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 404.1527(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005).

An ALJ may not reject the opinion of a treating doctor without providing good reasons. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000); 20 C.F.R. § 404.1527. Thus, an ALJ's failure to explain his or her rationale for rejecting a treating medical source opinion concerning the claimant's ability to work is reversible error. *See Reed v. Barnhart*, 399 F.3d 917, 921–22 (8th Cir. 2005) (failing to provide good reasons for rejecting treating source opinions).

### B. *Analysis*

The Commissioner does not dispute that Erin Peterson, D.O., was a treating physician. Doc. No. 12 at 18-19. Dr. Peterson began treating Hyde for back pain on May 3, 2010. AR 356. On November 2, 2010, she noted that she had exhausted all conservative care options and recommended a functional capacity evaluation (FCE). AR 344-45. The FCE was conducted on November 30, 2010, by Peggy Martin, a physical therapist. AR 359-64. Ms. Martin found, among other things, that Hyde was limited to occasional sitting and occasional standing during a work day.[1] AR. 364. Dr. Peterson

---

[1] "Occasional" was defined as being up to one-third of a work day. AR 364.

adopted Ms. Martin's FCE findings as Hyde's permanent restrictions. AR 343 ("I do think the restrictions at this point are permanent and will let them be guided by the functional capacity evaluation.").

The ALJ rejected Dr. Peterson's sitting and standing limitations without explanation and made an RFC finding that Hyde had the ability to "stand, walk or sit for 6 hours in an 8-hour workday." AR 13. As noted above, however, a treating physician's opinion is entitled to controlling weight in the absence of good reasons for discrediting it. The ALJ provided no such reasons. Whatever silent reasons the ALJ may have had, they could not have included a finding that Dr. Peterson's opinion was contrary to the findings of other examining sources. Cassim Igram, M.D., conducted an independent medical examination on February 13, 2012, and endorsed Ms. Martin's FCE findings as Hyde's permanent restrictions. AR 397.

On November 2, 2012, Sunil Bansal, M.D., conducted another independent medical examination and, again, adopted the FCE's findings as to Hyde's permanent standing and sitting restrictions. AR 493-94. Similarly, Hyde's treating chiropractor, Lyle Abbas, D.C., provided an opinion dated April 16, 2012, which included findings that Hyde could sit for less than one hour and could stand/walk for no hours. AR 404. He further noted that Hyde would need to alternate sitting and standing throughout the day. *Id.* Finally, on May 20, 2013, another treating physician, Joseph Behr, M.D., provided an opinion indicating, *inter alia*, that Hyde could not sit or stand and/or walk six hours during an eight-hour work day. AR 432. Dr. Behr reported that "constant pain prevents sitting for any meaningful length of time." *Id.* He also found that Hyde would need to lay down several times per day for twenty minutes to relieve his pain and that Mr. Hyde credibly reported his pain. AR 433.

Only Mark Dankle, D.O., a state agency consultative examiner, reached a contrary opinion. On December 21, 2011, Dr. Dankle examined Hyde and concluded that he had "no limitations with regards to standing, walking, or sitting." AR 386. Dr.

Dankle was not asked to review Hyde's medical records as part of his evaluation. AR 381. The ALJ did not explain why she adopted Dr. Dankle's findings over those of Dr. Peterson and the other examining sources who concluded that Hyde had significant sitting and standing restrictions. Perhaps good reasons existed, but the ALJ did not provide them. I find that this error requires remand. *Reed*. 399 F.3d at 921–22.

I further find that Dr. Peterson's opinion concerning Hyde's ability to sit and stand is both (a) well-supported by the FCE, Dr. Peterson's treatment history with Hyde and the opinions of other examining sources and (b) not inconsistent with other substantial evidence in the record. As such, Dr. Peterson's sit and stand limitations are entitled to controlling weight. On remand, the ALJ shall afford controlling weight to Dr. Peterson's opinion, adjust Hyde's RFC accordingly and consider whether Hyde is disabled within the meaning of the Act.

## VI. CONCLUSION

For the reasons set forth herein, the Commissioner's determination that Hyde was not disabled is **reversed and remanded** for further proceedings consistent with this order. Judgment shall enter in favor of the plaintiff and against the defendant.

**IT IS SO ORDERED.**

**DATED** this 29th day of January, 2016.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE